In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-3625

ESTHER HUSSEY,

*Plaintiff-Appellant*,

*v.*

MILWAUKEE COUNTY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12-C-73 — **William J. Callahan, Jr.**, *Magistrate Judge*.

ARGUED APRIL 25, 2013 — DECIDED JANUARY 29, 2014

Before MANION and KANNE, *Circuit Judges*, and LEE, *District Judge*.[*]

LEE, *District Judge*. Esther Hussey, on behalf of herself and all others similarly situated, sued Milwaukee County (the "County") in state court alleging that its failure to provide cost-free health insurance to retirees constituted a taking of

---

[*] The Honorable John Z. Lee of the Northern District of Illinois, sitting by designation.

property without due process of law in violation of the
United States and Wisconsin constitutions. The County
removed the case to the United States District Court for the
Eastern District of Wisconsin.

The parties consented to the jurisdiction of the magistrate
judge, who stayed briefing on the class certification issues
pending the resolution of the parties' cross-motions for
summary judgment. On summary judgment, Hussey argued
that the County ordinances bestowed upon retirees a
property interest in "cost-free" health insurance. In response,
the County contended that it only promised retirees the
ability to participate in the same health insurance plan ("the
Plan") as active employees on a "premium-free" basis. The
magistrate judge reviewed the language of the ordinances
and agreed with the County, granting its motion for
summary judgment and denying Hussey's cross-motion.
Hussey appealed.[1] We affirm.

## I. Background

Hussey worked for the County, primarily in the Register
of Deeds Office, starting in 1961 until she retired in 1991. At
the time that she was hired, she was required to make a
monthly contribution toward the cost of her health
insurance.

By 1971, the County provided its employees with health
insurance pursuant to the Milwaukee County Code of
General Ordinances (hereinafter "MCCGO") § 17.14(7),

---

[1] On September 10, 2013, Esther Hussey passed away during the
pendency of this appeal. On October 25, 2013, the Court granted her
estate's motion for substitution of party.

which stated in pertinent part: "Hospital and surgical insurance shall be provided for county employees upon application of each employe. The county shall participate in the payment of monthly premiums for such insurance … for eligible employes in the classified service, except for employes 65 years or age or over." MCCGO § 17.14(7)(a) (1971).

In June of that same year, the County amended the ordinance to expand this coverage to retired County employees. Specifically, Section 17.14(7)(i) was amended to read that the "[p]rovisions of (a), (b), (c) and (d) shall apply to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employe or beneficiaries of such members." MCCGO § 17.14(7)(i) (1971).

Since 1971, Section 17.14 has undergone a number of amendments. By 1989, Section 17.14(7) provided that "[t]he County shall participate in the payment of the monthly costs or premium for [health insurance] benefits." MCCGO § 17.14(7) (1989). Section 17.14(7)(a) was amended that year to provide that "[t]he County shall pay the full monthly costs of providing such coverage for employes who commenced their employment with Milwaukee County prior to July 31, 1989." MCCGO § 17.14(7)(a) (1989). And Section 17.14(7)(h) made this provision applicable to eligible retired employees. MCCGO § 17.14(7)(h) (1989).

In 1993, Section 17.14(7)(h) itself was amended to provide expressly that "[t]he County shall pay the full monthly cost of providing such [health insurance] coverage to retired members of the County Retirement System with 15 or more years of creditable pension service." Furthermore, starting in

1996, Section 17.14(7) also stated that "[t]he provisions of this subsection are considered a part of an employee's vested benefit contract." MCCGO § 17.14(7) (1996).

It is undisputed that, at the time of her retirement in 1991, Hussey had paid no co-payments, co-insurance payments, or deductibles in conjunction with her health plan. Also that year, Hussey received a benefit plan booklet that explained: "If an active employee retires with fifteen years or more of County service, the retiree may participate in the health plan in which he/she is currently enrolled on the same basis as coverage provided to the active employee group. The County will make the full premium contribution on behalf of the retiree."

Furthermore, it is worth noting that, prior to Hussey's retirement in 1991, the County had revised its health care insurance benefits to include a "fee-for-service" plan and a Health Maintenance Organization ("HMO") plan and required employees who were hired after July 31, 1989, to contribute to their selected plan. *See* MCCGO § 17.14(7)(a), (b) (1989). The County continued to modify its health insurance plans after 1991, changing insurance carriers and revising the applicable deductibles, co-payments and co-insurance amounts. In fact, as early as 2001, the ordinance increased the various charges that active employees and retirees had to pay as participants in the plans. *See. e.g.,* MCCGO § 17.14(7)(a), (b) (2000); § 17.14(8)(d), (e) (2000). The County nevertheless continued to pay the "monthly costs of providing such coverage" for eligible retirees. *See* MCCGO § 17.14(7)(h) (2000). As for Hussey, according to her affidavit, she "never had to pay any co-pays or any contributions toward [her] retirement healthcare benefits" until 2006, or if

she had been required to make such payments "they either were not exacted by the provider or [she has] no recollection" of them.

In 2012, the County again amended its health insurance plans, which further increased the deductibles, co-payments, and co-insurance charges that Hussey would have to bear. These amendments also modified the plan's coordination of benefits with Medicare for retirees over the age of 65. Prior to the 2012 amendments, the County's plan had employed the "come-out-whole" method of benefits coordination, under which any expenditures not covered by Medicare was paid in full by the County. Starting in 2012, the County began to utilize the "non-duplication" method, which designated Medicare as the primary health coverage provider and reduced the benefits to be paid under the County's plan by the amount of benefits paid by Medicare. Among other things, this change ensured that retirees over the age of 65 would pay the same deductibles, co-payments, and co-insurance charges as other retirees and active employees.

## II. Discussion

"We review a summary judgment determination as well as any questions of constitutional law under the *de novo* standard of review." *Anderson v. Milwaukee Cnty.*, 433 F.3d 975, 978 (7th Cir. 2006). "Summary judgment is appropriate where the pleadings, discovery, disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011).

Hussey alleges that the County's failure to provide cost-free health insurance to retirees constitutes a taking of property without due process of law in violation of the United States and Wisconsin constitutions. Because Wisconsin courts employ the same analysis for takings claims under either the federal or state constitution, *City of Milwaukee Post No. 2874 Veterans of Foreign Wars v. Redevelopment Auth. of the City of Milwaukee*, 768 N.W.2d 749, 757 (Wis. 2009), the Court utilizes a single analysis with regard to Hussey's takings claims.

The Fifth Amendment provides that "private property [shall not] be taken … without just compensation." U.S. Const. amend. V. The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To establish either a due process violation or an unconstitutional taking, Hussey must demonstrate that she was deprived of a vested property right. *Bettendorf v. St. Croix Cnty.*, 631 F.3d 421, 429 (7th Cir. 2011) (due process); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267–68 (1994) (taking).

Under the Fifth and Fourteenth Amendments, "[p]roperty … is an *entitlement*, by which we mean a valuable right that cannot be withdrawn unless a specified substantive condition comes to pass." *Lim v. Cent. DuPage Hosp.*, 871 F.2d 644, 646 (7th Cir. 1989) (quotation omitted). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

"[V]iewed functionally, property is what is securely and durably yours under … law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain … ." *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983).

"Property interests, of course, are not created by the Constitution." *Roth*, 408 U.S. at 577. "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*; *see, e.g., Germano v. Winnebago Cnty.*, 403 F.3d 926, 927–28 (7th Cir. 2005) (holding that state law created a property interest in continued group insurance to retired deputies at the same premium rate charged to active deputies). On appeal, Hussey argues that the district court erred in granting summary judgment in favor of the County because it misapplied the Wisconsin law that establishes her vested property right in cost-free health insurance. The County, of course, disagrees.

It is undisputed that Hussey has a vested property interest in participating in the County's retiree health insurance plan. However, the parties hotly dispute the contours of that interest. In short, Hussey's position is that she has a property interest in "cost-free" health insurance, that is, insurance coverage free of deductibles, co-payments, and co-insurance charges. The County in turn acknowledges that Hussey possesses a property interest, but contends that this interest is limited to participating in the same health insurance plan as active employees without the need to pay

the attendant premiums—what the County refers to as "premium-free" health insurance.

As an initial matter, Hussey argues that the district court erred in ignoring a number of well-established Wisconsin cases that stand for the proposition that once a property right in a benefit is vested, the benefit cannot be modified or eliminated. *See, e.g., Roth v. City of Glendale*, 614 N.W.2d 467, 473–74 (Wis. 2000); *Wis. Retired Teachers Ass'n, Inc. v. Employe Trust Funds Bd.*, 558 N.W.2d 83, 92 (Wis. 1997); *Ass'n of State Prosecutors v. Milwaukee Cnty.*, 544 N.W.2d 888, 889 (Wis. 1996); *Schlosser v. Allis-Chalmers Corp.*, 271 N.W.2d 879, 885 (Wis. 1978). Hussey's reliance on these cases, however, puts the proverbial cart before the horse. Before we can determine whether a vested property right has been modified or infringed, we first must ascertain the exact nature of that right. For present purposes, we must determine whether Hussey has a vested property interest in "premium-free" health insurance or "cost-free" health insurance. For if the existing rules and understandings, as defined by state law and municipal ordinances, demonstrate that Hussey lacks a property interest in "cost-free" health insurance, the requirement that she pay deductibles, co-payments, and co-insurance charges beginning in 2006 would not constitute a modification of a vested property right.

Unfortunately, the cases and state statutes cited by Hussey that discuss pension and health benefits provide no assistance in our determination of whether Hussey has a property interest in cost-free health insurance. Moreover, because the health insurance program for retirees was not created until 1971, her reliance on pre-1971 statutes, ordinances, cases, and plan booklets is equally unhelpful.

Rather than resting upon these sources, we must determine the contours and dimensions of Hussey's property interest by examining the existing rules and understandings that stem from state law and the municipal ordinances defining the County's obligation to provide health insurance for active and retired employees. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (stating property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law").

The 1971 General Ordinance provided for the first time that the health insurance provisions applicable to employees also "appl[ied] to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employe." MCCGO § 17.14(7)(i) (1971). The ordinance also stated that "[t]he payment of Blue Cross-Blue Shield and major medical insurance *premiums* as above provided shall be made for coverage commencing July 1, 1971 for employees presently enrolled and payment of *premiums* for those retired employees not presently enrolled shall be made for coverage commencing September 1, 1971." *Id.* (emphases added). Thus, as of 1971, the plain language of the ordinance made it abundantly clear that the County committed itself to pay only the premiums of retired employees for their medical insurance. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

By 1989, the ordinance provided that "[t]he County shall participate in the payment of the monthly costs or premium

for [health insurance] benefits." MCCGO § 17.14(7) (1989). And Section 17.14(7)(a) was amended to provide that "[t]he County shall pay the full monthly costs of providing such coverage for employes who commenced their employment with Milwaukee County prior to July 31, 1989." MCCGO § 17.14(7)(a) (1989). Section 17.14(7)(h) made this provision applicable to eligible retired employees. MCCGO § 17.14(7)(h) (1989).

Then, in 1993, Section 17.14(7)(h) itself was amended to provide expressly that "[t]he county shall pay the full monthly cost of providing such [health insurance] coverage to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employe." MCCGO § 17.14(7)(h) (1993).

Accordingly, by the time that Hussey retired and in the years thereafter, the municipal ordinances required the County to pay the "premiums" or "monthly costs" of providing the same health insurance coverage for retirees that it was providing to active employees. No deductive leap is needed to conclude that the County's promise to pay "premiums" does not comprise a promise to pay all of the costs incurred by a retiree in obtaining health care. And as for the term "monthly costs," we agree with the district court that co-payments, deductibles, and co-insurance charges are not *monthly* costs because they are not incurred on a month-to-month basis. Rather, such costs are incurred if and when a health care service is provided and then only on an annual basis (in the case of deductibles) or an as-needed basis (in the case of co-payments and co-insurance charges).Thus, nowhere do these ordinances create an entitlement for retirees—or active employees for that matter—to receive

cost-free health insurance as Hussey contends. Put another way, in light of the plain and unambiguous language of the relevant ordinances, we cannot equate the County's obligation to pay the premiums and monthly cost of providing health insurance with the obligation to pay the full cost incurred by Hussey of receiving health care services. *See United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009) ("If the language … is clear and unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.") (quotation omitted).[2]

The language in the benefits booklet that Hussey received when she retired in 1991 only serves to bolster this conclusion. The booklet states: "If an active employee retires within fifteen years or more of County service, the retiree may participate in the health plan in which he/she is currently enrolled on the same basis as coverage provided to the active employee group. The County will make the full *premium contribution* on behalf of the retiree." (emphasis added).

Hussey also takes umbrage with the district court's conclusion that the municipal ordinances only required the County to provide retirees with the same level of health insurance coverage that was provided to active employees.

---

[2] Similarly, the ordinances do not obligate the County to utilize any particular coordination of benefits formula with respect to retirees who receive benefits under Medicare. Although the change from a come-out-whole formula to a non-duplication formula in 2011 "undoubtedly increase co-payments for certain retirees, it put them in no worse position than they would have been absent Medicare." *Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 309 (7th Cir. 1996).

This objection is unfounded. Throughout its various iterations, Section 17.14(7) defined the health care coverage available to retirees in relation to the coverage provided simultaneously to active employees. For example, the June 1971 amendments noted that the "[p]rovisions of (a), (b), (c) and (d) [which applied to active employees] shall apply to retired members." MCCGO § 17.14.7(i) (1971). The 1989 amendments declared that "[p]rovisions of (a) [which applied to active employees] shall apply to retired members." MCCGO § 17.14(7)(h) (1989). The 1993 and 1996 versions of the ordinance stated that the "County shall pay the full monthly cost of providing *such* coverage [*i.e.*, coverage applicable to active employees] to retired members." MCCGO § 17.14(7)(h) (1993, 1996) (emphasis added). And, indeed, the 1991 benefits booklet expressly equates the scope of the coverage that an employee can expect to receive upon retirement with that "provided to the active employee group." Nor does the record support the proposition that Hussey has been treated differently when compared to active employees who had received similar health care services under the same plan.[3]

---

[3] For example, starting in 2001 and continuing through 2006, the ordinances required active employees to pay certain monthly fees as well as various other charges. Whether Hussey had to pay such charges and, if so, what those charges were is unclear from the record. *See, e.g.,* Appellant's Br. 20 (noting that Hussey had paid "administratively enacted co-pays" starting in 2006). Furthermore, in her brief, Hussey appears to argue that she and similarly situated retirees were not adversely affected by the County's alterations to the health care plans until 2011. *See id.* 21 ("It was not until the 2011 enactments that retirees were directly affected by [the] ordinances, though the County had earlier administratively demanded small contributions from retirees at the point

Hussey's consternation is understandable. For many years, she participated in the County's health insurance plan and received health care services without having to pay any deductibles, co-payments, or co-insurance charges. But there is no evidence in the record that the County had ever failed to pay a health care insurance premium on Hussey's behalf as it had promised. Additionally, even assuming for the moment that she had not been asked to pay any deductibles, co-payments, or co-insurance charges prior to 2006, this in and of itself does not mean that the County had promised her these benefits under the applicable ordinances, thereby creating a constitutionally cognizable property interest. *See, e.g., Brown v. City of Mich. City*, 462 F.3d 720, 729 (7th Cir. 2006) (city's historical practice of allowing its residents to use its parks free of charge did not create a property interest), *reh'g denied en banc*, No. 05-3912, (7th Cir. Oct. 12, 2006); *Coghlan v. Starkey*, 845 F.2d 566, 570 (5th Cir. 1988) (plaintiff's expectation that she would continue receiving free municipal water based on past practices was insufficient to create a property interest).

Hussey also points out (and the County does not contest) that the level of deductibles, co-payments, and co-insurance charges levied upon plan participants bears an inverse relationship to the level of premiums charged by the health

---

of service."). In her affidavit, however, Hussey states that she "never had to pay any co-pays or any contributions" until 2006 and, as a hedge, immediately adds "if I was required to make those payments, they either were not exacted by the provider or I have no recollection." In any event, to the extent that Hussey received health care services after 2006, the record is devoid of any evidence of any active employees who had obtained similar services and whether they were required to make payments under the health care plan.

insurance plans, and by adopting and implementing plans that impose such charges, the County can decrease or maintain the premium levels, thereby shifting a portion of the cost of providing health care coverage to retired employees. But as discussed, Hussey was entitled only to receive health care insurance without being charged a premium; she was not entitled to participate in a particular health insurance plan. Furthermore, it is worth noting that, so long as the terms of the health insurance plan provided to retired employees remain the same as those provided to active employees, the County cannot shift the costs of health insurance coverage to retirees without limit, for doing so would substantially impede its ability to recruit and maintain active employees.

In conclusion, Hussey held a secure and durable right to participate in the health care insurance plans that the County offered to active employees without having to pay an insurance premium. She never had the right, however, to a health care insurance plan that allowed her to obtain health care services on a completely cost-free basis. Because Hussey never had a vested property right in cost-free health insurance, the requirement starting in 2006 that she pay deductibles, co-payments, and co-insurance charges does not diminish a property right. The district court properly granted summary judgment in Milwaukee County's favor, and the opinion is AFFIRMED.