Gary J. MONREAL, Plaintiff-Respondent,†

v.

CITY OF NEW BERLIN, Defendant-Appellant.

Court of Appeals

*No. 2014AP458. Submitted on briefs December 18, 2014.*
*—Decided February 4, 2015.*

2015 WI App 24

(Also reported in 861 N.W.2d 802.)

† Petition for Review denied June 12, 2015.

172

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Alan E. Seneczko* of *Wessels, Sherman, Joerg, Liszka, Laverty, Seneczko P.C.* of Oconomowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lester A. Pines* and *Sean P. Lynch* of *Cullen, Weston, Pines & Bach, LLP* of Madison.

Before Brown, C.J., Neubauer, P.J., and Stark, J.

¶ 1. BROWN, C.J.  This is the second case we have reviewed involving the City of New Berlin and a

retired police officer based on a claim to health benefits as a duty-related disability retiree. We did not publish the first one, *Chialiva v. City of New Berlin*, No. 2013AP1191, unpublished slip op. (WI App July 2, 2014),[1] and issued our decision per curiam. The issues are next to identical in both cases. Due to the recurring nature of the issues, we will publish this decision. In a nutshell, when Gary Monreal retired, there was a health plan in place pursuant to a collective bargaining agreement between the City and its police association, calling for, among other things, the City reimbursing members of the association for all deductibles incurred. The health plan in effect at that time ran from January 1, 2009, through December 31, 2011. After that CBA expired, the City provided its officers with a high deductible health plan. In the circuit court, Monreal contended, and the circuit court agreed, that one of the promises on retirement was a vested right to have his deductibles reimbursed for the rest of his life—as if the CBA referred to above was frozen in time for Monreal. We disagree. Like we held in *Chialiva*, Monreal has a vested right to participate in a health plan offered by the City for the rest of his life, but the agreement to reimburse for deductibles lasted only until the end of the CBA in effect when Monreal retired. We reverse.

---

[1] WISCONSIN STAT. RULE 809.23(3) (2011–12) disallows the citation of per curiam decisions for precedent or authority. We mention *Chialiva* here because it deals with a nearly identical fact situation before the same panel and we ultimately arrive at the same conclusion. It may not technically be law of the case, but it is the mirror image of a legal issue establishing the law in a like case.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

*Facts*

¶ 2.  Gary Monreal worked for the City of New Berlin as a police officer from February 26, 1990, through May 15, 2010. Monreal, like all police officers in New Berlin, was a member of the New Berlin Professional Police Association. The association represented Monreal as a party to a CBA between New Berlin police officers and the City.

¶ 3.  From January 1, 2009, through December 31, 2011, a CBA negotiated by the City and the New Berlin Professional Police Association governed Monreal's employment. This CBA detailed and controlled various aspects of the officers' employment, including their health insurance benefits.

¶ 4.  On September 16, 2008, Monreal injured his shoulder while performing CPR in the course of his official duties as a police officer. This injury caused permanent damage to Monreal's shoulder, which forced him to retire on May 15, 2010. Monreal qualified for duty-related disability retirement under WIS. STAT. § 40.65.

¶ 5.  Section 5.02 of the CBA in effect from January 1, 2009, through December 31, 2011, describes the City's responsibility to provide health insurance to active duty police officers:

> Employees may select single or family health insurance coverage. Employees shall contribute ten percent (10%) of the monthly premium, through the Section 125 program with the balance to be paid by the City.
>
> Effective January 1, 2009, the standard health insurance program provided to Employees will be the United Healthcare Choice Plus Plan 7EO-Modified. The City will reimburse employees and retirees one hundred percent (100%) of any incurred expenses

in-network equal to the deductible. The City has the right to change carriers for its standard health insurance plan provided the coverage is fundamentally equivalent to the health insurance in effect on January 1, 2004 and there is no lapse in coverage. In addition to the standard health insurance program (UHC Plan 7EO-Modified) provided to Employees, the City may offer to Employees an alternative health insurance plan or plans. The Employee shall have the option of selecting either the provided standard plan or one of the other offered alternative plan(s). In the event an employee has a spouse that is also a City employee, that employee and the employee's spouse will be entitled to only one family health insurance contract or two single contracts between them from the City.

Monreal received health insurance from the City pursuant to the terms of this section from January 1, 2009, until May 15, 2010, when he became a duty-related disability retiree.

¶ 6.   Beginning on May 15, 2010, and continuing until the CBA expired on December 31, 2011, the City provided Monreal with health insurance benefits pursuant to Section 5.03, which states:

Employees who retire under the provisions of WISCONSIN STATUTES Section 40.65 shall be covered by the City's health insurance plan. Retirees under this section may select single or family health insurance coverage and shall contribute the same percentage of the monthly premium as is required of active employees with the balance to be paid by the City.

During this time, the City reimbursed Monreal for 100% of all the in-network deductibles he paid, which the City's health insurance plan, as detailed in Section 5.02, required.

176

¶ 7. On December 31, 2011, the CBA in force when Monreal retired expired. On January 1, 2012, the City implemented a high deductible health insurance plan for all active duty police officers that the New Berlin Professional Police Association represented. This health insurance policy had an in-network deductible of $5200 for family coverage. When the City implemented this plan it also stopped reimbursing active duty police officers for any payments they made towards their deductibles. On January 1, 2013, the City implemented another high deductible health insurance plan that required police officers to pay a deductible of $6000 for family coverage. The City maintained its policy of not reimbursing active duty police officers for any payments they made towards their deductibles.

¶ 8. Beginning on January 1, 2012, and continuing through 2013, the City provided Monreal with health insurance under the high deductible plan offered to active duty police officers. During the years of 2012 and 2013, Monreal made out-of-pocket payments towards his deductible. The City did not reimburse him for these costs.

¶ 9. In March 2013, Monreal commenced the action that led to this appeal. In September 2013, Monreal filed a motion for summary judgment on the grounds that Section 5.02 of the 2009–2011 CBA granted him a vested right to reimbursement for any out-of-pocket costs he incurred up to the value of his deductible. The City also filed a motion for summary judgment, arguing that Section 5.03 contained all of Monreal's vested rights as a duty-related disability retiree and the City could require him to pay his deductibles once the 2009–2011 CBA expired. The circuit court ruled in favor of Monreal, holding "that

177

disabled officer Monreal became vested in a contract that promised him reimbursement of a hundred percent for deductibles of family coverage in network." The City appeals.

## Analysis

¶ 10. We review summary judgment orders de novo and apply the same standard the circuit court used. *Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 287, 531 N.W.2d 357 (Ct. App. 1995). The interpretation of a CBA presents this court with a question of law that we review independently from the circuit court. *Roth v. City of Glendale*, 2000 WI 100, ¶ 15, 237 Wis. 2d 173, 614 N.W.2d 467.

¶ 11. When public employees retire under a CBA, they can have vested rights to health insurance benefits. *See id.*, ¶¶ 25–26. The court in *Roth* acknowledged that such a claim to vested rights arises out of the CBA in force at the time the employee retires. *Id.*, ¶ 40. We must decide whether the circuit court in this case properly determined the scope of Monreal's vested health insurance benefits.

¶ 12. *Hussey v. Milwaukee County*, 740 F.3d 1139 (7th Cir. 2014), provides the legal framework for our analysis. The dispute in *Hussey* centered on a county ordinance detailing the rights of retired former county employees to receive health insurance benefits. *Id.* at 1140–42. Hussey retired after thirty years of working for Milwaukee County. *Id.* at 1140. The ordinance covering Hussey and other employees like her required the County to pay the "full monthly cost" of health insurance benefits to retirees with fifteen or more

years of service. *Id.* at 1141. When Hussey retired, the health insurance plan being offered by the County did not require her or other similarly situated retirees to pay any copayments or deductibles. *Id.* However, the County later changed plans and providers, shifting substantial costs onto retirees in the form of copayments and deductibles. *Id.* Hussey sued, alleging that since she received cost-free health insurance when she retired she had a vested right to continue receiving health insurance without any out-of-pocket expenses for the rest of her life. *Id.* at 1140. She claimed the County violated this right when it pushed costs onto her. *Id.* The County argued that since the ordinance governing the rights of retirees to receive health insurance benefits only required payment of "full monthly costs," it fulfilled its obligation as long as Hussey never had to pay a premium. *Id.* at 1140–41.

¶ 13. The Seventh Circuit reasoned that the first step in this analysis is to determine the nature and scope of Hussey's vested right. *Id.* at 1143. To do this, the court looked only at the state law and county ordinances describing the County's obligation to pay for retirees' health insurance. *Id.* The court concluded that "the County's promise to pay 'premiums' does not comprise a promise to pay all of the costs incurred by a retiree in obtaining health care." *Id.* at 1144. The "plain and unambiguous language" of the ordinance at issue conclusively defined Hussey's rights, and she could not rely on any other cases, statutes, or her own experience receiving cost-free health insurance to show otherwise. *Id.* at 1143–46. The court refused to impose any obligations on the County beyond what the letter of the ordinance required. *Id.* at 1144. Therefore, the County could impose additional costs by making Hussey participate in the same insurance plan offered

to active employees as long as it did not require her to pay a premium. *Id.* at 1146.

¶ 14.   The theme of *Hussey* is nearly mirrored in our decision in this case; the letter of the law or agreement alone dictates the scope of the vested rights. The fact that the *Hussey* court dealt with a county ordinance while we are asked to interpret a contract is a distinction without a difference in a matter like this one. In both situations, the parties look to the court to interpret legal language and determine the scope of the covenant they formed.

¶ 15.   Neither party disputes that Monreal has a vested right to health insurance benefits as a duty-related disability retiree. The only disagreement is over what these vested rights require the City to provide. Therefore, we apply the same rationale that the Seventh Circuit used in *Hussey* to this case by examining the language of the CBA and determining the scope of Monreal's vested right to health insurance based on the letter of the contract. In doing so, we treat the language of the contract as definitive, acknowledging that Monreal cannot have a vested right to anything beyond what the CBA grants him.

¶ 16.   We conclude that Section 5.03 of the CBA in place from January 1, 2009, through December 31, 2011, is the only section granting Monreal vested rights with regard to health insurance. This section clearly and unambiguously details an open-ended promise the City makes to duty-related disability retirees. The City promises to take care of duty-related disability retirees by covering them under its health insurance plan for as long as they need, allowing them to elect single or family coverage, and paying the balance on their health insurance premium after they

contribute the same amount as active employees.[2] Nothing in this section indicates that the duration of the vested right to health insurance should be limited. Nothing in this section indicates that Monreal can ever be denied this right under any circumstances. The open-ended promise in Section 5.03 gives Monreal his vested right to health insurance.

¶ 17. A close examination of Section 5.02 shows that the contracting parties meant it to be limited in duration. Section 5.02 says the standard health insurance program they will provide to employees is "[e]ffective January 1, 2009." Within that section, the City reserves the right to change carriers for the standard coverage and offers police officers the opportunity to participate in an alternative plan. Nothing in this section indicates an open-ended promise like the one in Section 5.03. Section 5.02 does not promise that the standard plan taking effect on January 1, 2009, will be offered indefinitely, nor does it say that the alternative plans will always be available. None of the broad, open-ended language in Section 5.03 is found in Section 5.02. Simply put, Monreal's contention that he has a vested right to the same health insurance coverage as detailed in Section 5.02 does not hold water. Unlike Section 5.03, nothing in the CBA indicates that the contracting parties meant for the rights granted in Section 5.02 to endure beyond the contract's expiration. No law or policy in Wisconsin freezes a contract of limited duration in time unless its language calls for that result. In this case, the language of the contract

---

[2] Monreal also argues that he was entitled to choose from plans offered to various other employee groups other than the plan relating to active duty police officers. This argument has no legs. The CBA here specifically tied Monreal's health insurance to the same plan offered to police officers on the job.

states that the rights granted to Monreal under Section 5.03 are vested and extend beyond the expiration of the CBA, but those contained in Section 5.02 terminate with the agreement.

¶ 18.   The City did not improperly take away any of Monreal's vested rights. The City provided health insurance coverage to Monreal, allowed him to select single or family coverage, and paid the balance of his premiums. The language of the CBA did not obligate the City to provide Monreal with the coverage he received under Section 5.02 during the term of the 2009–2011 CBA in perpetuity. Under the promise the City made through Section 5.03, switching Monreal to a coverage plan that required him to pay a higher deductible did not interfere with any of his vested rights. Therefore, we hold that the City acted appropriately within the constraints of Section 5.03.

¶ 19.   Monreal advances one more argument to claim vested rights to deductible-free health insurance.[3] He relies on *Roth* to argue that each term of the CBA governing his employment became his vested right because the agreement did not expressly provide otherwise. *See Roth*, 237 Wis. 2d 173. Therefore, Monreal contends, *Roth* grants him a vested right to the deductible-free health insurance coverage described in Section 5.02. However, he extends the holding in *Roth* too far.

¶ 20.   The *Roth* court was asked to determine whether a group of former city employees had a vested right to fully paid health insurance benefits pursuant to the CBA they retired under. *Id.*, ¶ 1. The litigation in *Roth* focused exclusively on the CBA section that

---

[3] We were not asked to address this argument in *Chialiva v. City of New Berlin*, No. 2013AP1191, unpublished slip op. (WI App July 2, 2014).

specifically described benefits the City of Glendale owed to retirees. *Id.*, ¶¶ 4–8. The court of appeals decided that although the CBA in effect when each employee retired called for retirees to receive health insurance free of any personal cost, the City could alter those benefits through subsequent agreements. *Id.*, ¶¶ 10–12. The Supreme Court of Wisconsin reversed, holding there is a presumption that retiree benefits outlined in a CBA vest at the time of retirement "unless the language of the agreement suggests otherwise." *Id.*, ¶¶ 25–26. If the language of the contract is evaluated and found to be ambiguous, then the parties can use extrinsic evidence to rebut the presumption. *Id.*, ¶ 25. Although the *Roth* court described the vesting presumption as a "default rule," *id.*, ¶ 26, we do not think the presumption applies as broadly as Monreal contests.

¶ 21.  Monreal argues that the vesting presumption applies to all terms of the CBA "unless the agreement expressly provides otherwise." As a result, he claims that his rights to deductible-free health insurance vested under Section 5.02. However, Monreal's argument mischaracterizes the court's holding in *Roth*, which actually says the presumption applies unless the language of the agreement "suggests otherwise." *Id.*, ¶ 25. We must make a fact-specific inquiry into the language of this specific CBA to decide what promises were or were not made. Therefore, our first step is to look at the CBA's language to determine whether there is anything to suggest that duty-related retirees do not have vested rights under Section 5.02. We hold that the limiting language contained in Section 5.02 and the presence of Section 5.03 in the CBA suggests the parties to the contract did not intend that duty-related disability retirees have vested rights to

deductible-free health insurance. Section 5.03 of the CBA at issue in this case specifically and unambiguously describes the entirety of the health insurance benefits the City owes to duty-related disability retirees. This court does not presume Monreal has any vested rights to health insurance arising out of Section 5.02.

¶ 22. Furthermore, the *Roth* case is distinguishable. The plaintiffs in *Roth* sued over the vested rights they claimed arose from the section of the CBA detailing benefits the City owed to retirees. *Id.*, ¶¶ 4–8. In the case at hand, Monreal claims that he has vested rights beyond the scope of the CBA section detailing rights for duty-related disability retirees. We hold that the vesting presumption in *Roth* does not support Monreal's position.

*By the Court.*—Order reversed and cause remanded.