In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 16-1245 and 16-1448

LEORA H. BELL, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellant,*

*v.*

CITY OF COUNTRY CLUB HILLS,

*Defendant-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 4227 — **James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 13, 2016 — DECIDED NOVEMBER 8, 2016

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, Leora H. Bell, filed
suit against Defendant-appellee, City of Country Club Hills,
claiming a deprivation of her constitutional rights in violation
of 42 U.S.C. § 1983. Bell's claims arise from the City's decision
to repeal an ordinance that provided a twenty-five percent tax
rebate to qualifying homeowners. The district court granted
the City's motion to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6), holding that the tax rebate did not confer a vested property right upon Bell. Bell appeals, arguing that she maintains a vested property right in the rebate program, and that the City unlawfully repealed the ordinance. For the reasons stated below, we affirm.

## I. BACKGROUND

On April 23, 2012, the City of Country Club Hills City Council adopted Ordinance No. O-02-12, which provided to homeowners a twenty-five percent rebate of 2010 city property taxes paid in 2011, subject to the completion of an application by the homeowner and approval by the City Clerk. According to the application, this was the City's twelfth consecutive year of offering a rebate program. The application stated that the "FILING OF THIS APPLICATION DOES NOT GUARANTEE APPROVAL BY THE CITY OF COUNTRY CLUB HILLS." The city prepared the rebate checks but never distributed them to homeowners. In 2012, the Cook County treasurer overpaid the City by more than $6 million, and the County brought suit against the City in Cook County Circuit Court to collect the overpayment in July 2012.[1] Judgment was entered against the City a year later for nearly $6.6 million.

---

[1] This fact is not included in Bell's complaint. However, Judge Zagel recited it as part of his oral ruling in this case. His consideration of this fact was proper, as it originates from a report of an administrative body, permitting him to take judicial notice. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Courts may "consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." *Id*. Although our analysis does not turn on this fact, it does provide context to the City's actions, and we have therefore included it as background.

Bell filed the instant action on May 15, 2015, on behalf of herself and others similarly situated. She asserted a claim under § 1983, arguing that the City's refusal to issue the rebates constituted a taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, § 15 of the Illinois Constitution. Bell also asserted state law claims for conversion and unjust enrichment. On August 24, 2015, the City Council passed Ordinance O-11-15, which repealed the April 2012 Ordinance. On September 1, 2015, the City filed a motion to dismiss under Rule 12(b)(6), contending that Bell had no constitutionally protected property interest in the expectation of a rebate, and that she had adequate state court remedies for her claims under state law. The district court agreed with the City, and granted its motion on January 6, 2016.[2]

Bell filed a motion for relief from a final judgment under Federal Rule of Civil Procedure 60(b) on February 4, 2016, arguing that the City's August 2015 repeal of the April 2012 Ordinance was invalid because it violated the Illinois Open Meetings Act, 5 Ill. Comp. Stat. 120/2(e). The district court denied Bell's motion. On March 28, 2016, the City Council responded to concerns over the validity of its August 2015

---

[2]    It appears that Bell maintains doubt as to whether the district court dismissed the complaint under Rule 12(b)(6) or Rule 12(b)(1). However, after reviewing the judge's oral ruling, we think it is clear from the substance of his remarks that in his view Bell failed to state a claim under federal law. Therefore, the dismissal is properly considered under Rule 12(b)(6).

repeal by again repealing the April 2012 Ordinance. This appeal followed.

## II. DISCUSSION

We review the district court's granting of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party. *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 255 (7th Cir. 2014). A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). To state a claim, a complaint must first provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement of the claim must sufficiently give to the defendants "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Additionally, the complaint's factual allegations must raise the claim above a mere "speculative level." *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citations and internal alterations omitted).

Bell asserts her constitutional claims against the City under § 1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law … ." In order to state a claim under this provision, the following conditions must be met: "(1) the offending conduct [must be] committed by someone who acted under the color of state law; (2) the actions deprive the plaintiff of a constitutionally protected property interest; and (3) the alleged deprivation occurred without due process of law." *Germano v. Winnebago Cnty.*, 403 F.3d 926, 927 (7th Cir. 2005). The parties do not appear to dispute that the City acted under color of law.

Bell contends that the City's failure to issue the rebate constitutes a taking of a government benefit without due process of law in violation of the United States and Illinois Constitutions. The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." *Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015) (quoting U.S. Const. amend. V). The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of*

*State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "Property interests are not created by the Constitution but rather 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Cole*, 634 F.3d at 904 (quoting *Roth*, 408 U.S. at 577).

"Accordingly, federal property interests under the 14th Amendment usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with public entities." *O'Gorman v. City of Chi.*, 777 F.3d 885, 890 (7th Cir. 2015) (citation omitted). "Although we look to state law for the source of the plaintiff's alleged property interest, whether a particular state-created interest rises to the level of a 'legitimate claim of entitlement' is a question of federal law." *Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir. 2015) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)).

Bell's principal contention is that her property interest in the rebate is derived from the April 2012 Ordinance. She argues further that the rebate is a "vested right" under Illinois law, and thus the City is precluded from using subsequent legislation to deny homeowners their rebates.

Under Illinois law, vested rights are "interests that are protected from legislative interference by [the Illinois] due process clause[.]" *Dardeen v. Heartland Manor, Inc.*, 710 N.E.2d 827, 830 (Ill. 1999) (quoting *First of Am. Tr. Co. v. Armstead*, 664 N.E.2d 36, 39 (Ill. 1996)). "Although whether a particular expectation rises to the level of a vested rights is not capable of a precise definition[,]" a vested right is "so complete and unconditional that it may be equated with a property interest."

*Dardeen*, 710 N.E.2d at 830 (quoting *Armstead*, 664 N.E.2d at 40) (internal alterations and quotation marks omitted).

We note that while Bell raises takings claims under both the United States and Illinois Constitutions, federal jurisdiction has been conferred based on her § 1983 claim. As stated above, § 1983 remedies deprivations of federal constitutional rights; it does not contemplate state constitutional errors. Therefore, to the extent Bell is seeking a remedy for state constitutional violations, she would need to raise her claim in state court, as the district court here relinquished supplemental jurisdiction over any such claim. We agree that this was the proper course of action. *See Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 848 (7th Cir. 2007) (affirming the relinquishment of supplemental jurisdiction of a state law "vested rights" claim).

However, to the extent Bell seeks protection of a vested property right under the Fourteenth Amendment, we reject that argument on the merits. In *People ex. rel. Eitel v. Lindheimer*, 21 N.E.2d 318 (Ill. 1939), plaintiffs were property owners who sought refunds for excess property tax payments that they made in previous years. State law in effect at the time permitted a refund or credit of taxes when property owners overpaid as a result of errors in the property value assessment. *Id*. at 320. The legislature repealed the state law subsequent to plaintiffs filing suit in Cook County Circuit Court. *Id*. at 319. Nonetheless, the circuit court ordered the County to issue the rebates to plaintiffs. *Id*. at 320. The County treasurer and clerk appealed, arguing that plaintiffs lacked a vested right in the rebates, and therefore the repeal was a valid legislative action that should be enforced. *Id*.

The court noted that because a citizen's obligation to pay taxes arises from statute, any refund offered by the legislature must also be "purely of statutory origin[,]" which it characterized as a "special remedial statute." *Id*. at 320–21 (citations omitted). In fact, the court observed that without a statute expressly providing for a refund, the county could not refund taxes that were overpaid. *Id*. at 320 (citation omitted). The court then inquired "whether the granting of a special remedy creates a vested right in the remedy that cannot be abrogated by repeal of the remedy." *Id*. at 321 (citation omitted). The court answered in the negative, finding that "[t]he unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them." *Id*. at 321.

The court held that plaintiffs did not possess a vested right in the rebate because they could not show more than "a mere expectation based upon an anticipated continuance of the existing law." *Id*. The court also found that the legislature had the right to repeal the statute because "there is no vested right in a public law which is not in the nature of a private grant." *Id.* at 322 (citation omitted). The guiding principle from *Lindheimer* is that when a right is derived from a remedial statute, the right is not vested, and the legislature has ongoing authority to repeal or amend the statute.

*Lindheimer* is factually similar to the instant case, and applying its guiding principle, we find that April 2012 Ordinance is also a special remedial statute that does not confer vested rights upon Bell or the City's other homeowners. Without the ordinance, the City is powerless to provide the

rebate to homeowners. Further, the granting of this special remedy does not create a vested right under Illinois law.

Bell's attempt to distinguish *Lindheimer* is unpersuasive. She argues that while the refund in *Lindheimer* is a special remedial statute, the rebate program in the instant case is a private grant that is immune to repeal. Bell contends that the remedial statute in *Lindheimer* is distinguishable because it was available to the general public, and the specific individuals who would invoke their rights under the statute were unknown at the time of the statute's passage. In contrast, she argues that the City's rebate program is a private grant because the April 2012 Ordinance is directed toward a specific group of individuals—"all eligible homeowners"—instead of the general public. Thus, Bell concludes that the City's rebate program is a private grant.

However, we could not discern the basis of Bell's theory of general versus specific applicability, as it is not rooted in any case law or statute that we could locate. Bell fails to raise any meaningful substantive distinctions between the April 2012 Ordinance and the special remedial statute in *Lindheimer*. Accordingly, we decline to adopt her novel interpretation of a "private grant." Indeed, it is clear under *Lindheimer* that the right to a property tax rebate can only stem from a remedial statute. Thus, we conclude that the April 2012 Ordinance is a remedial statute incapable of conferring vested rights, and

therefore the City acted within the scope of its legal authority in repealing the April 2012 Ordinance.[3]

Having examined the source of the Bell's property interest, we now analyze whether it rises to the level of a protected property interest. *See Quinn*, 793 F.3d at 808. We have held that "[a] protected property interest exists only when the state's discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met.'" *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (quoting *Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006)); *see also Barrow v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007) ("Where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement." (citation omitted)). In essence, a plaintiff must "point to a state law, or another independent source, that *guarantees* him" entitlement to a government benefit. *Brown*, 462 F.3d at 729.

Bell argues that the mandatory language "shall" used in the April 2012 Ordinance removes any discretion on the part of the City to refuse issuing the rebates. *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he

---

[3] In so holding, we do not reach the issue of whether the City Council's August 2015 repeal of the April 2012 Ordinance violated the Illinois Open Meetings Act, 5 Ill. Comp. Stat. 120/2(e). It is clear that no vested rights were at issue, and therefore the City had an ongoing right to amend or repeal the ordinance. Therefore, the validity of the repeal is immaterial to our takings analysis. Any violation of the Illinois Open Meetings Act committed by the City should be addressed in state court.

mandatory 'shall' … normally creates an obligation impervious to judicial discretion."). However, the language used in both the text of the April 2012 Ordinance and on the face of the rebate application demonstrates that the City explicitly retained the discretion to reject applications from homeowners. Therefore, it cannot be said that "nondiscretionary rules" governed the granting of the rebate, thereby creating a legal entitlement. The *Lindheimer* court described the tenuous relationship between property owners and property tax rebates as a "mere expectation" rather than a vested right. *See Lindheimer*, 21 N.E.2d at 321. And as the district court judge noted, the rebate program was a discretionary measure taken by the City that it was free to nullify under Illinois law. Accordingly, no state law or ordinance *guarantees* Bell an entitlement to the rebate.

We recognize that the City offered the rebate program for a number of years prior to 2012, but this fact alone is insufficient to confer the status of a constitutionally protected property interest upon the rebates. *See, e.g.*, *Brown*, 462 F.3d at 729 (city's historical practice of allowing its residents to use its parks free of charge did not create a property interest because city possessed discretion to decide whether and under what conditions members of the public can access the parks); *Hussey v. Milwaukee Cnty.*, 740 F.3d 1139, 1145–46 (7th Cir. 2014) (county's historical practice of providing cost-free health insurance to retirees did not create a vested property right in free health insurance because no state law or municipal ordinance explicitly provided for free health insurance). We find that the rebate program is the type of "unilateral expectation" that does not rise to the level of a property interest. *See*

*Roth*, 408 U.S. at 577. Thus, Bell has no constitutionally pro-
tected property interest in the rebate. Consequently, she cannot
state a claim for an unconstitutional taking.

The deficiency in Bell's takings claim is conclusive regard-
ing her due process claim, as there can be no deprivation of
property without procedural or substantive due process of law
without an underlying property interest. *See Khan v. Bland*, 630
F.3d 519, 533–35 (7th Cir. 2010).

We briefly turn to Bell's remaining state law claims. We
affirm the district court's dismissal of Bell's state law claims
because Bell has no viable federal claim, and neither party
contends that we should retain jurisdiction over state law
claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726
(1966).

Nonetheless, while Bell has failed to state a viable claim
under the federal Constitution, assuming *arguendo* that she
had, we and the district court would still be obliged to abstain
from granting relief based on the principles of comity and
abstention set forth in *Fair Assessment in Real Estate Ass'n v.
McNary*, 454 U.S. 100 (1981), and *Capra v. Cook Cnty. Bd. of
Review*, 733 F.3d 705, 712–13 (7th Cir. 2013).

In conclusion, Bell cannot state a claim under § 1983 for a
taking or due process violation because she lacks a protected
property interest. Having no viable federal claim, the district
court correctly concluded that Bell's only path forward was to
file her state law claims in state court.

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.